UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| N.Y.F.S., <br><br> Petitioner, <br><br> v. <br><br> PAMELA BONDI et al., <br><br> Respondents. | CASE NO. 2:25-cv-02556-LK <br><br> ORDER FOR SUPPLEMENTAL BRIEFING |

This matter comes before the Court on Petitioner N.Y.F.S.'s petition for a writ of habeas corpus. Dkt. No. 1.[1] For the reasons discussed below, the Court orders the parties to submit supplemental briefing.

### I.   BACKGROUND

Petitioner is a citizen of Honduras and is currently being held in detention at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* at 6. Petitioner was first encountered by U.S. Border Patrol ("BP") agents in Brownville, Texas in 2008. Dkt. No. 12 at 1;

---

[1] Petitioner improperly embeds a perfunctory "motion to proceed anonymously" in her habeas petition. Dkt. No. 1 at 2. Petitioner may not embed requests for non-habeas relief within her habeas petition, Fed. R. Civ. P. 7(b) ("A request for a court order must be made by motion"); *see also Larson-White v. Rohling*, No. 08-3246-SAC, 2008 WL 5046381, at *2 (D. Kan. Nov. 24, 2008) (denying motions for non-habeas relief that were "[i]mproperly attached" as pages within a habeas petition), and the Court will require her to proceed under her real name pursuant to Federal Rule of Civil Procedure 10(a) unless she files an appropriate motion—with legal and factual support—within seven days of this Order.

ORDER FOR SUPPLEMENTAL BRIEFING - 1

Dkt. No. 13-8 at 4. "BP determined Petitioner had entered the United States without inspection, issued an Order of Expedited Removal, and subsequently removed Petitioner to Honduras." Dkt. No. 12 at 1–2; *see also* Dkt. No. 13-8 at 4. On or about July 23, 2018, BP agents encountered Petitioner in Calexico, California and determined that she had again entered the United States without inspection. Dkt. No. 12 at 2; *see also* Dkt. No. 13-8 at 4. BP issued Petitioner a Notice to Appear charging her as removable under 8 U.S.C. § 1182(a)(6)(A)(i) (Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA")), released her following an arrest on an Order of Recognizance ("OREC"), and required Petitioner to appear before the immigration court in Utah to show why she should not be removed from the United States. Dkt. No. 12 at 2; Dkt. No. 13-2 at 2 (Notice to Appear); Dkt. No. 13-4 at 2 (OREC requiring Petitioner to appear before the immigration court in Utah on July 31, 2018); Dkt. No. 13-8 at 4. The OREC "impos[ed] reporting requirements and other conditions on release, including enrollment in Alternatives to Detention ('ATD')." Dkt. No. 12 at 2. Petitioner's GPS monitoring agreement stated that "[f]ailure to comply with the requirements of the ATD program may result in a redetermination of your release conditions or your arrest and detention." Dkt. No. 13-5 at 3.

On September 18, 2018, Petitioner appeared before the immigration court in Salt Lake City, Utah, "where [she] requested additional time to retain counsel" and the immigration judge granted her request for a continuance. Dkt. No. 12 at 2. Petitioner avers that she was then forced to flee Utah "as the father of her children had discovered where she had fled to" and she "did not have time to obtain counsel" because of her need to flee. Dkt. No. 1 at 6. According to Respondents,[2] "[o]n or about October 11, 2018, Petitioner reported and informed [ICE

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary." (citation modified)); and (2) federal respondents

ORDER FOR SUPPLEMENTAL BRIEFING - 2

Enforcement and Removal Operations ('ERO')] that she intended to return to Honduras." Dkt. No. 12 at 2. "ERO informed Petitioner about obtaining a passport at the consulate in Los Angeles, California, and advised her to report to local ERO upon her arrival," but "ERO does not have any record of Petitioner reporting to local ERO in Los Angeles." *Id.* About two weeks later, Petitioner "informed ERO she would be in the Bay Area of California for some time." *Id.* ERO again "advised her to report to local ERO upon her arrival," but "ERO does not have any record of Petitioner reporting to local ERO in the San Francisco area." *Id.* "On or about October 29, 2018, Petitioner's ATD monitor missed a callback."

On April 23, 2019, Petitioner failed to report for a master calendar hearing before the immigration court in Salt Lake City, Utah. *Id.* at 3. Consequently, the immigration judge ordered her removed to Honduras in absentia. *Id.* The parties do not appear to dispute that the order of removal became final in October 2019. *See* Dkt. No. 11 at 9; Dkt. No. 14 at 10 (stating that Petitioner "is over 180 days beyond her final removal order").[3] On October 30, 2019, "Petitioner's ATD was terminated" as she was deemed a "program absconder." Dkt. No. 12 at 2.

On November 25, 2025, ERO became aware that Petitioner was in the Portland, Oregon area, and issued a "Warrant for Arrest of Alien." Dkt. No. 12 at 3; Dkt. No. 13-7 at 2. ICE then initiated a targeted enforcement operation. Dkt. No. 12 at 3; Dkt. No. 13-8 at 3–4; *see also* 8 C.F.R. § 1236.1 ("At the time of issuance of the notice to appear, or at any time thereafter and up to the

---

often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[3] Petitioner's removal order became final 180 days after the order of removal was issued. *Cui v. Garland*, 13 F.4th 991, 996 (9th Cir. 2021) ("Because in absentia removal orders may not be appealed to the BIA without first filing a motion to reopen the order before the IJ within 180 days of the order, 8 U.S.C. § 1229a(b)(5)(C)(i); *In re Guzman-Arguera*, 22 I. & N. Dec. at 723, if the petitioner does *not* timely file such a motion before the IJ the order becomes final at the end of the 180-day period."); *see also* Dkt. No. 13-6 at 2 (stating that the removal order is final "unless a Motion to Reopen is filed in accordance with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. § 1229a(b)(5)(C) in removal proceedings").

ORDER FOR SUPPLEMENTAL BRIEFING - 3

time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest."). ICE arrested Petitioner on November 26, 2025, Dkt. No. 12 at 3, ran her fingerprints at the Portland ICE facility, Dkt. No. 1 at 7, and transported her to NWIPC after her records showed she had a deportation order, *id.*; Dkt. No. 12 at 3. On December 23, 2025, ICE served Petitioner with notice of her OREC revocation. Dkt. No. 11 at 3; Dkt. No. 12 at 4; *see generally* Dkt. No. 13-9.

Petitioner states that she "had no notice" of her removal order, and avers that "[i]mmediately upon learning of her outstanding removal order," she "sought to obtain counsel to pursue a motion to reopen her removal proceedings, rescind her removal order, and pursue relief from deportation including through filing an asylum application and application for T-Visa." Dkt. No. 1 at 6–7. Petitioner states that she has a four-year-old son and cares for her 20-year-old nephew, and "fears for the safety of her son without her there to care of him." *Id*. at 5–7.

Petitioner asserts three claims for relief in her habeas petition. First, she asserts that her arrest violated the Fourth Amendment prohibition on unreasonable seizures. *Id.* at 9–10. Second, she alleges that her "arbitrary detention" violates her due process rights under the Fifth Amendment because it is "not based on a rational and individualized determination of whether [s]he is a safety or flight risk nor consider[ation of] the merits of [her] circumstances and [her] eligibility for relief from deportation." *Id.* at 10–11. Third, she claims that "Respondent[s'] stated intent to arbitrarily transfer Petitioner out of the Northwest where she lives and where her four year old [son] is waiting for her" violates her Fifth Amendment right to procedural due process "by interfering with [her] access to her retained counsel and her established eligibility to pursue a Trafficking Visa and move to reopen and set aside the [in absentia] removal order." *Id.* at 11. For these alleged constitutional violations, Petitioner seeks a remedy of release from custody. *Id.* at 12. Respondents oppose the petition. Dkt. No. 11.

ORDER FOR SUPPLEMENTAL BRIEFING - 4

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *see also Ben-Sholom v. Ayers*, 674 F.3d 1095, 1099 (9th Cir. 2012).

## III. DISCUSSION

### A. Jurisdiction

As an initial matter, the Court addresses its jurisdiction to hear this case. Respondents correctly note that this court may not hear challenges to Petitioner's final order of removal; "the appropriate forum to raise that claim is through the administrative process or the Ninth Circuit – not this Court." Dkt. No. 11 at 2 (citing 8 U.S.C. §§ 1252(b)(9), (a)(5), (g)). However, the petition raises no challenge to the final order of removal, and Petitioner's reply confirms that she "does not challenge her removal order." Dkt. No. 14 at 3; *see generally* Dkt. No. 1. Petitioner raises only constitutional claims purportedly connected with her detention, which fall squarely under this Court's habeas jurisdiction. *See* 28 U.S.C. § 2241(c); *Jennings v. Rodriguez*, 583 U.S. 281, 293–94 (2018). Thus, the Court has jurisdiction to hear all claims for relief raised by Petitioner.

### B. Request for Supplemental Briefing on Due Process Claim

Petitioner argues that her detention was "not based on a rational and individualized determination of whether he [sic] is a safety or flight risk" or a consideration of "the merits of his [sic] circumstances and his [sic] eligibility for relief from deportation," and her detention therefore violates her due process rights. Dkt. No. 1 at 11. Respondents assert that Petitioner's final removal order constitutes a rational reason to detain her, and that her individual circumstances did not require notice or an opportunity to be heard prior to her detention: she "had notice of the requirements of her OREC," but "failed to appear for an immigration hearing" and "left her prior

ORDER FOR SUPPLEMENTAL BRIEFING - 5

residence without notifying ICE of her relocation," indicating that she "would likely not show up or respond if noticed of ICE's decision to re-detain her before taking her into custody." Dkt. No. 11 at 8–11.[4]

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001) (citing *Campos-Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir. 1999), *superseded by statute on other grounds as recognized in Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1052 (9th Cir. 2023)). Accordingly, the Supreme Court has held that "the Due Process Clause protects a[] [noncitizen] subject to a final order of deportation[.]" *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238 (1896)); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). Under 8 U.S.C. § 1231(a)(2)(A), a noncitizen "shall" be detained during the removal period. The Ninth Circuit has held "the period of detention under § 1231(a)(2) . . . passes constitutional scrutiny." *Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004). After that 90-day removal period concludes—in what is referred to as the "post-removal period"— the government's detention authority shifts to Section 1231(a)(6). *See* 8 U.S.C. § 1231(a)(6); *Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021). "[T]he due process analysis attaches in

---

[4] For the first time in her reply brief, Petitioner argues that Respondents also violated her due process rights because they "did not provide notice of their custody authority." Dkt. No. 14 at 11. The Court will not consider new arguments made for the first time in a reply brief.

ORDER FOR SUPPLEMENTAL BRIEFING - 6

the post-removal period[.]" *Khotesouvan*, 386 F.3d at 1301; *see also Aguilar Garcia v. Kaiser*, No. 3:25-CV-05070-JSC, 2025 WL 2998169, at *5 (N.D. Cal. Oct. 24, 2025) (Finding that Petitioner did not establish a likelihood of success on the merits of his habeas petition because "Petitioner is within the 90-day mandatory detention window of Section 1231(a)(2) and due process does not require a bond hearing at least until he is in the post-removal period").

The Court must therefore decide whether Petitioner is in the post-removal period. There is no dispute that Petitioner's order of removal, which was issued in absentia, became administratively final in October 2019, Dkt. No. 11 at 9; Dkt. No. 14 at 10,[5] and that she was not removed within 90 days of the order becoming final. However, Respondents assert that "the removal period could not have commenced after her order of removal in absentia." Dkt. No. 11 at 5. Specifically, they contend that "ICE has not previously had the opportunity to execute the removal order because Petitioner was ordered removed in absentia and did not comply with her terms of release." *Id.* Petitioner replies that "she is over 180 days beyond her final removal order," so she was entitled to "notice and an opportunity to be heard" before Respondents detained her. Dkt. No. 14 at 10.

The INA provides that the removal period "shall be extended beyond a period of 90 days . . . if the [noncitizen] . . . conspires or acts to prevent the [noncitizen's] removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). The Ninth Circuit has held that this provision applies when the noncitizen obstructs his or her removal. *Diouf v. Mukasey*, 542 F.3d 1222, 1230–32 (9th Cir. 2008); *see also Prieto-Romero v. Clark*, 534 F.3d 1053, 1061 (9th Cir. 2008). In *Diouf*, the Court held that the text of Section 1231(a)(1)(C) permitted an approach whereby "the 90–day clock [w]ould restart following the latest date of documented obstruction." 542 F.3d at 1231. Thus, the

---

[5] *See supra* n.3.

ORDER FOR SUPPLEMENTAL BRIEFING - 7

90-day clock for a noncitizen who evaded ICE's attempts to apprehend him restarted on the latest date of his obstruction of his removal. *Id.* The Court observed that the purpose of the 90-day period—to "afford the government a reasonable amount of time within which to make the travel, consular, and various other administrative arrangements that are necessary to secure removal"— would be frustrated by "[u]sing a single 90–day clock prior to and following a lengthy period of obstruction" by the noncitizen. *Id.* If obstruction could run down the clock, it would "substantially truncat[e] the amount of time within which the removal arrangements must be made." *Id.* When the applicability of Section 1231(a)(1)(C) is at issue, "it is the burden of the government to document the conduct that extends the removal period[.]" *Id.* n.4; *see also Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 502 (S.D.N.Y. 2009) ("[I]t is the responsibility of DHS to make a bona fide attempt to [remove the noncitizen] within the removal period"; if ICE does not "fulfill its responsibility, § 1231(a)(1)(C) does not apply.").

In contrast to other cases where courts found a lack of obstruction where noncitizens did not receive notice of a final order of removal,[6] here, Petitioner does not contest Respondents' assertions that she fled Utah, failed to appear before immigration court at her scheduled hearing, and never subsequently attempted to contact the immigration court or ICE, despite the fact that before her missed hearing, (1) she had been served with a Notice to Appear charging her as

---

[6] *See, e.g.*, *Gregorio Ordonez v. Bondi*, No. 2:25-CV-02356-JHC-TLF, 2025 WL 3852444, at *6 (W.D. Wash. Dec. 19, 2025) ("[P]etitioner's failure to appear is not the sort of bad faith action that would allow for extension of the removal period, particularly where the final order was issued *in absentia* when he was a child, and he indicates he was unaware of the order and thus could not have affirmatively acted to thwart its enforcement."), *report and recommendation adopted*, 2026 WL 30022 (W.D. Wash. Jan. 5, 2026); *M.L.G.G. v. Wamsley*, No. 6:25-CV-02012-AA, 2025 WL 3539183, at *2 (D. Or. Dec. 10, 2025) ("Petitioner's failure to appear is not the sort of bad faith action that would allow extension of the removal period. Plaintiff credibly testified that she was not aware of the order of removal—which was issued *in absentia* when she was a child—until she was arrested and so could not have affirmatively acted to thwart its enforcement."); *Farez-Espinoza*, 600 F. Supp. 2d at 502 ("[F]ar from attempting to hide or abscond to avoid the enforcement of the order, [Petitioner] continued to live with her family and her whereabouts were well known to the Government for over 15 months before she was taken into custody," and "[h]er failure to appear at her Immigration Court hearing does not rise to the level of 'bad faith failure to cooperate' necessary to trigger the extension provision of § 1231(a)(1)(C).").

ORDER FOR SUPPLEMENTAL BRIEFING - 8

removable under 8 U.S.C. § 1182(a)(6)(A)(i); (2) she then appeared in immigration court and obtained a continuance of removal proceedings so that she could obtain counsel; and (3) she was subject to an OREC containing reporting requirements and other conditions on her release. Dkt. No. 11 at 1–3; *see also Allen v. Holder*, No. 10-CIV-2512-GBD-JLC, 2010 WL 11643354, at *8 (S.D.N.Y. Dec. 9, 2010) (tolling 13-year time period when petitioner absconded from immigration officials after failing to appear before the immigration court); *Guan Zhao Lin v. Holder*, No. 10 CIV. 4316, 2010 WL 2836144, at *5 (S.D.N.Y. July 2, 2010) (observing that "[a]lthough the Petitioner's change in residence is not dispositive of a bad faith failure to cooperate, it supports an argument that Petitioner's whereabouts at some point may have become unknown to the Government") (citation modified); *cf. Leslie v. Herron*, No. 10-CV-00515-AM, 2010 WL 4226561, at *4 (W.D.N.Y. Oct. 26, 2010) ("[W]here DHS has been aware of a petitioner's whereabouts and petitioner has not absconded or otherwise attempted to avoid enforcement of the removal order, the removal period is not extended under § 1231(a)(1)(C)."). Because the record does not contain sufficient information for the Court to make determine whether, when, and for how long Section 1231(a)(1)(C) applies to the present case, the Court orders supplemental briefing as outlined below.

## IV.     CONCLUSION

Based on the foregoing, the Court ORDERS each party to file supplemental briefing addressing the applicability of Section 1231(a)(1)(C) to Petitioner's current detention, as follows:

1. Respondents' brief of no more than 4,200 words, along with any supporting declarations and exhibits, is due January 20, 2026. Respondents must address what efforts, if any, they made between April 23, 2019 and November 25, 2025 to locate and/or remove Petitioner. Respondents should also address Petitioner's argument

ORDER FOR SUPPLEMENTAL BRIEFING - 9

that her sponsorship of her nephew and her establishment in her community demonstrate that she "has not sought to evade immigration." Dkt. No. 14 at 9.

2. Petitioner's brief of no more than 4,200 words, along with any supporting declarations and exhibits, is due January 23, 2026.

As noted in footnote 1 above, the Court will require Petitioner to proceed under her real name unless it receives an appropriate motion by January 20, 2026.

Dated this 13th day of January, 2026.

　　　　　　　　　　　　　　　　　　　　Lauren King
　　　　　　　　　　　　　　　　　　　　United States District Judge